Story, Justice,
 

 delivered the opinion of the court. — This is an appeal from a
 
 pro forma
 
 decree of the circuit court of the district of Maryland, in a case in admiralty, for mariners’ wages. The original libel (which was filed in December 1810) was against the owners
 
 in personam;
 
 alleging, among other things, that the libellants (six in number) shipped on board the Warren, in August 1806, to perform a voyage from Baltimore to the north-west coast, thence to Canton, in the East Indies, and thence back again to Baltimore ; that they proceeded on the voyage ; but that with the privity and consent of the owners, the ship deviated, without any justifiable cause, from the voyage, and arrived at Conception Bay, on the coast of Chili, for the purpose of carrying on an illicit trade against the colonial laws of Spain ; that the vessel was there *seized by the Spanish authorities, ri. and finally decreed to be forfeited ; the crew were taken on shore *- and held for a great length of time in imprisonment; and afterwards, having effected their escape, arrived in the United States, in 1810. The owners appeared and made a defensive answer; which was excepted to, and afterwards amended. Some testimony was taken ; but no further proceedings appear to have been had, until October 1818, when an amended libel was filed by the libellants and others (in all fifty-seven persons); and in June 1819, another amended libel by another of the seamen. The only allegation in these supplements, which it is material to mention, is, that the owners had received the whole or a part of the proceeds of the ship and cargo. At a later period, in the year, 1819, all the owners became insolvent. In December 1819, Lemuel Taylor (one of the owners) assigned to Robert Oliver all his interest in the proceeds of the Warren and cargo, whenever recovered; in November 1820, Smith & Buchanan (two other owners) assigned, among other things, all their interest in the proceeds of the ship and cargo to Jonathan Meredith and Thomas Ellicott, in trust for the Bank of the United States and other creditors ; and in May 1821, Hollins & McBlair, the other owners, assigned all their interest in the proceeds, of the ship and cargo to the Union Bank. All these assignments were made to secure debts antecedently due. Long before these assignments, to wit, in June 1815, the owners had procured from the King of Spain, a royal order for the restitution of the ship and cargo. But no restitution having been in fact made, the assignees laid their claim before the commissioners appointed under the treaty with Spain of 1819, commonly called the Florida treaty; and the commissioners, in 1824, awarded them compensation, as follows: for the ship Warren $25,000 ; for the cargo $125,131.93 ; and for the freight $13,860. This amount was accordingly paid to them by the United States. In December 1825, the libellants filed a new libel, by way of petition, against the owners, and against their assignees, setting forth their grievances in a more aggravated form; and alleging the award and receipt of the proceeds *by the assignees, and the promises of the owners to indemnify and pay them out of the proceeds, whenever L recovered, to the full amount of their wages ; and accounting for their not having proceeded to a decree
 
 in personam,
 
 against the owners ; except so far as to have a docket entry, in June 1822, of a “decree on terms
 
 *456
 
 to be filed” (which was afterwards rescinded), solely upon the faith of those promises; and praying process against the owners, and also against the assignees, to pay them the amount out of the proceeds in their hands. Answers were duly filed by the owners and the assignees ; the former asserting that they had parted with all their interest in the funds ; and the latter asserting their exclusive title to the same, under the assignments, and denying any knowledge of any agreement of the owners in respect to the claim of wages, or of the other matters stated in the petition. Further testimony was taken; and'finally, by consent of the parties, at May term 1828, a decree
 
 pro formé
 
 passed, affirming the decree of the district court, dismissing the libels and petition exhibited in the cause ; from which decree, the case now stands upon appeal before this court.
 

 Such is a very brief statement of the principal proceedings in this protracted suit; in its duration, almost unparalleled in the annals of the admiralty, whose anxious desire and boasted prerogative it is to administer justice, as the metaphor is,
 
 velis levatis.
 
 A great portion of the delay (which would otherwise seem a reproach to our law) can be attributed to no other cause than the voluntary acquiescence of all the parties, under the peculiar circumstances growing out of new emergencies in its progress.
 

 The cause has been most elaborately and learnedly argued at the bar, upon a variety of points suggested by the different postures of the case. The view, however, taken by us of the merits, renders it wholly unnecessary for us to go into any examination of many of these points ; and "this opinion will be accordingly confined to those only which are indispensable to a decision ; and which, we trust, after such a lapse of time, will prove a final decision.
 

 The first question is, whether, in point of fact, the libellants have substantially sustained the allegations in the libels and *petition in respect -*710] to the voyage ; viz., their ignorance of the intended illicit trade ; and and the seizure of the ship, and their own imprisonment and separation from it: which are necessary to maintain their claim for wages. And we are of opinion, that the evidence upon these points is conclusive. Without going into the particulars, it may be said, that few cases could be presented, under circumstances of more aggravation ; and in which the proofs were more, clear, that the seamen were the victims of an illicit voyage, for which they never intended to contract, and in which they had no voluntary participation.
 

 Such then being the state of the facts, the law upon the subject is very clear. It is, that the seamen are entitled to full wages from the time of their shipping on the voyage, to the time of their return to the United States : deducting their advance wages, and whatever they have earned (if any) in any intermediate employment. This is the general rule in courts of admiralty, in cases of this nature ; where the libel seeks nothing beyond compensation in the nature of wages. To this extent, the seamen are entitled to a decree against the owners. But they being insolvent, it becomes necessary tu inquire, whether they have not also a remedy against the assignees holding the proceeds of the ship, cargo and freight in their hands ?
 

 If the ship had been specifically restored, there is no doubt, that the seamen might have proceeded against it in the admiralty, in a suit
 
 in rem,
 
 for the whole compensation due to them. They have, by the maritime law, an indisputable lien to this extent. This lien is so sacred and indelible, that it
 
 *457
 
 has, on more than one occasion, been expressively said, that it adheres to the last plank of the ship. 1 Pet. Adm. note, 186, 195 ; 2 Dods. 13 ;
 
 The Neptune,
 
 1 Hagg. 227, 239. And, in our opinion, there is no difference between the case of a restitution in specie of the ship itself, and a restitution in value ; the lien re-attaches to the thing and to whatever is substituted for it. This is no peculiar principle of the admiralty. It is found incorporated into the doctrines of courts of common law and equity. The owner and the lien-holder, whose claims have been wrongfully displaced, may follow the proceeds, wherever they can distinctly trace them. In respect, *therefore, to the proceeds of the ship, we have no difficulty in affirming that the lien in this case attaches to them.
 

 In respect to the freight, there is more room for argument. That there is an intimate connection between the freight and the wages, that the right to the one is, generally, though not universally, dependent upon the other, is a doctrine familiar to all those who are conversant with maritime 1 aw, and has given rise to the quaint expression, that freight is the mother of wages. Indeed, freight being the earnings of the ship, in the course of the voyage, it is the natural fund out of which the wages are contemplated to be paid ; for though the ship is bound by the lien of wages, the freight is relied on as the fund to discharge it, and is also relied on by the master, to discharge his personal responsibility. We think, then, that this relation between the freight and wages does, by the principles of the maritime law, create a claim or privilege in favor of the seamen, to proceed against it, under the circumstances of the present case. Here, the owner of the ship is also owner of the cargo. There has been an award allowing the assignees freight, as a distinct item; and the owners are insolvent. If the master of the skip were living, he would have a direct Hen upon the freight for his disbursements, and liability for wages ; and through him the seamen would have the means of asserting a claim on it. We can perceive no principle, then, why, in the present case, the seamen may not justly assert a claim on the freight, if the proceeds of the ship are exhausted, without satisfying the amount of their wages. No authority has been produced against it; and we think it justly deducible from the general doctrines of the maritime law on this subject.
 

 It has been argued, that the admiralty has no jurisdiction in this case ; but we are of opinion, that the objection is unfounded. Over the subject of seamen’s wages, the admiralty has an undisputed jurisdiction,
 
 in rem,
 
 as well as
 
 in personam,;
 
 and wherever the lien for the wages exists, and attaches upon proceeds, it is the familiar practice of that court, to exert its jurisdiction over them, by way of monition to the parties holding the proceeds. This is familiarly known in the cases of prize, and bottomry, and salvage ; and is equally applicable to the case of wages.
 

 *In respect to the claim of the assignees to hold the proceeds for their exclusive use, as
 
 bond fide
 
 purchasers, we think, it cannot be [*712 maintained in point of law. In respect to the ship and its proceeds, they stand in no better situation than the original owners. They take the title,
 
 cum onere.
 
 The lien will follow the ship, and its proceeds, into whosever hands they may come, by title or purchase from the owner. In respect to the freight, the same consideration does not necessarily apply. But here, the assignees (though there is no doubt that they are
 
 bond fide
 
 holders) have
 
 *458
 
 taken their asignments as mere securities for antecedent debts, and had either actual or constructive notice of the claims of the seamen, when they received their conveyances. There was not only the
 
 Usjiendens
 
 to affect them with constructive notice; but the very circumstance of the derivation of their title from the owners, was sufficient to put them upon inquiry. It was indispensable, to enable them to make an available claim before the commissioners. So that, in both views, they are unprotected, as against the libellants. This view of the matter disposes of the principal questions necessary for the decision of the cause; as we are of opinion, that the whole proceeds of the ship and freight, in the hands of the assignees, are liable to the payment of the seamen’s wages. We think, there is no claim whatsoever upon the proceeds of the cargo ; as that is not in any manner hypothecated, or subjected to the claim for wages.
 
 [1]
 

 It has been supposed, at the argument, that there is some repugnancy in the petition of the seamen, in asserting a claim for wages, on the ground, that the voyage was illicit, and in asserting a claim against the proceeds in the hands of the assignees, upon the ground, that the voyage was lawful, and therefore, the award of compensation to the owners was rightful; but, upon a just consideration of the matter, no such repugnancy exists. The allegation on the part of the seamen is, that they shipped on one voyage, which was lawful, and that they were carried on another voyage, for which they did not ship ; and in which the ship was seized, and they were imprisoned for being engaged in an illicit trade. Row, the voyage in respect to them might be wholly tortious and illicit, because it was not within the scope of their contract; and they may have been thereby sub- . jected to all the consequences of an ’Illicit trade, although as between
 

 [1]
 

 -* the owners and the Spanish authorities, the voyage may have been specially permitted, as an exception to the general colonial prohibitions, or, at least, may not have been disapproved of in the particular instance. If the King of Spain had a right to make the seizure, and pursue it to condemnation ; yet he might, under all the circumstances, deem it just or expedient, as between the owners and himself, to order restitution ; and when such restitution was so made, as between himself and them, the, voyage might be deemed no longer subject to the imputation of illegality. If the order of restitution was not complied with, it constituted a good claim against Spain; and consequently, a good claim under the Florida treaty.
 

 The award of the commissioners is conclusive on this subject; but it concludes no more than its own correctness. Suppose, the ship, after a
 
 *459
 
 seizure and condemnation by the local Spanish authorities, had upon appeal, been specifically restored by the King of Spain ; there is no pretence to say, that she might not have been proceeded against in the admiralty, for the full compensation of the seamen. Their right to such compensation, in such a case, would depend, not upon the fact, whether there were an illegal service or not, but upon the fact, whether there had been an unjustifiable deviation from the voyage contracted for ; r.nd there is no legal distinction, as has been already stated, between proceeding against the ship and against the proceeds restored in value.
 

 In respect to the claim of interest made by the libellants, we are of opinion, that under the peculiar circumstances of this case, none ought to be allowed upon their wages, except for the period of time, which has elapsed since the petition was filed against the assignees and owners, on the 1st of December 1825. The previous delay was, as it seems to us, either a voluntary delay, assented to by all parties ; or else, under circumstances of so much doubt as to the nature and extent of the claim, as ought to preclude any claim for interest. The assignees having had the funds in their hands since that period, must be presumed to have made interest on them ; and therefore, there is no hardship in considering them liable to pay interest to the seamen.
 

 The cause not having been heard upon the merits, either in *tbe ^ district or circuit court, it is impossible for this court to ascertain *- the precise amount, to which the libellants are respectively entitled, without a reference to a commissioner to ascertain and report the amount, upon the principles already stated. It will be necessary, therefore, to remand the cause to the circuit court for this purpose; and it is to be understood, in order to avoid any further delays, that the commissioner is to proceed with all reasonable dispatch ; and is to report to the court the amount due to each seaman, as soon as he shall ascertain the same ; so that each may have a separate decree (as in libels of this sort he well may), for his own share, without waiting for any final decree upon the claims of the others. Where the exact time of the return of any seaman cannot be ascertained, the commissioner will make an .average estimate, as near as the facts will enable him to do so. In case of the death of any seaman, who is a libellant, his administrator is to be brought before the court, before any final decree is entered upon his claim.
 

 A special order will be drawn up by the court, to be sent to the circuit court for its direction upon these points ; and the decree of the circuit court is reversed, and the cause remanded accordingly.
 

 This cause came on to be heard, on the transcript of the record from the circuit court of the United States for the district of Maryland, and was argued by counsel : On consideration whereof, it is ordered, adjudged and decreed by the court, that the decree of the circuit court affirming the decree of the district court, dismissing the libels and petition in this cause, be and the same is hereby reversed : and this court, proceeding to render such decree as the circuit court ought to have rendered, it is further ordered, adjudged and decreed, that the libellants are entitled to full wages, according to the terms of their original shipping articles or contract, from the time of their shipping, until their return and arrival in the United States,
 
 *460
 
 after the seizure of the said ship Warren and cargo, in the manner in the proceedings mentioned ; deducting therefrom any advance wages paid to them, and any wages earned by them, in any employment, in the interme- ^ -i diate period ; *and that a decree be entered against the owners of the
 
 '
 
 said ship, in the said procedings mentioned, for the amount of such wages, as soon as the same shall be ascertained in the manner hereinafter stated, with interest thereon from the 1st day of December 1825.
 

 And it is further ordered, adjudged and decreed, that a decree be rendered against the other respondents in-this cause for the payment of the same wages, when so ascertained, with interest as aforesaid, out of the funds and proceeds (but not exceeding the funds and proceeds) of the said ship Warren, and freight received by them, under the assignments and the award of the commissioners under the treaty with Spain in the. said proceedings mentioned : to wit, out of the sum of $25,000 awarded for the said ship ; and the sum of $13,860 awarded for the freight thereof; according to the proportions thereof by them respectively received as aforesaid : and that interest at the rate of six per cent, per annum, be paid by them, and considered as a part of the said funds and proceeds, from the time when the petition and libel against them was-filed, to wit, from the 1st day of December 1825, until the time when a final decree is and shall be made in the premises by the circuit court; or until the same funds and proceeds shall by order of the circuit court be brought into the registry of the court.
 

 And it is further ordered, and adjudged and decreed, that this cause be remanded to the circuit court with the following directions: 1. To refer it to the commissioner to ascertain, from the evidence and proceedings, and other proper evidence, the amount due to each of the. libellants, for wages and interest thereon, upon the principles stated in this decree. And that he be required, forthwith, and as soon as may be, to proceed upon this duty and to report to the circuit court the amount due to each of the libellants, separately, as soon as he shall have ascertained the same ; so that a separate and several decree may be entered therefor to each libellant respectively. 2. In cases where the exact time of the return of any of the libellants cannot ascertained, the commissioner is to make *an average estimate of J the time, as near as the facts will enable him to do so, and to report accordingly. 3. In cases where any of the libellants have died during the pendency of the proceedings in this suit, no final decree is tó be entered in respect to such libellant, until his personal representatives shall become party to the suit.
 

 Taney, of counsel for the appellees in this cause, filed the following suggestions in writing : “ The supreme court having announced their intention to send a special direction to the circuit court, stating the principles on which this case is to be finally settled ; and the case on the part of the assignees, who are appellees, having been prepared merely with a view to obtain the decision of this Court on the points which have been argued and decided ; they pvay that they may be allowed to offer further proof, on the following ¡joints, either in this court or the circuit court. 1. The expenses incurred by the owners in prosecuting this claim in Spain, in order to procure the order of restoration. 2. The expenses of the assignees in prosecuting the claim before the commissioners under the Florida treaty. 3. The amount
 
 *461
 
 of the compensation to which the assignees ave entitled for their services, as general agents for those interested in the fund. 4. The said appellees beg leave also to be permitted to offer in evidence, either in this court or in the circuit court, the records of the proceedings against them in the said court, i sitting as a court of chancery, in relation to the fund now in question ; in which said proceedings the money received by them, under the award of the commissioners under the Florida treaty, was, by order of the said circuit court, paid into court, by the aforesaid assignees, and by the decree of the said court, distributed among certain claimants. 5. The said appellees also pray to be permitted to offer in evidence, the record of the proceedings in the chancery court of Maryland, in relation to a part of the said fund : so that, in ease there should be a conflict of the jurisdiction, they may not be made liable to pay the amount due into both courts.”
 

 The counsel for the appellee, on these suggestions, moved the court to rescind and annul the decree entered in this cause, and for leave to re-argue the same. *This motion was opposed by the counsel for the appel- ,-** * lants ; and an argument in writing, for and against the motion, was *- submitted. Afterwards, the court made the following order :
 

 And now, upon another and subsequent day of said January term, upon hearing the written motion made in behalf of the assignees, who are respondents in the said cause, and the arguments thereon, by the parties, it is further ordered, adjudged and decreed by this court, that the said assignees shall be allowed, in taking an account of the funds in their hands, to deduct therefrom a portion,
 
 pro rata,
 
 of the disbursements and expenses which have been actually incurred by them in prosecuting their claim before the commissioners, under the Florida treaty, in the proceedings mentioned ; and also shall be allowed to deduct therefrom two and one half per cent commission, as a compensation for their services, in and about the prosecution thereof as aforesaid ; and for this purpose they shall be allowed to produce new proofs before the said circuit court, and any commissioner appointed by the said court to take an account in the premises. But the parties (respondents) shall not be at liberty to adduce any proof of, or be allowed to deduct .from said funds any expenses, or disbursements, or charges, incurred by the owners of the said ship Warren, in Spain, or otherwise ; in order to procure the royal order of restoration in the said proceedings mentioned. And it is further ordered,
 
 \
 
 adjudged and decreed, that the said assignees shall be at liberty to offer in , evidence the proceedings in the said chancery suits, in the said written motion mentioned, in the said circuit court, and before the commissioner aforesaid ; . reserving to the said circuit court, and commissioner, respectively, the full ( right and liberty to judge whether the same suits, or either of them, are prop-1
 
 eiiy
 
 admissible, or competent as evidence, in any matter before the said court, or commissioner, under the farther proceedings in this cause, to be . had in the said circuit court.
 

 Baldwin, Justice, dissented from the order in relation to the proceedings in the circuit court, and the allowance of a commission to the defendants.
 

 [1]
 

 In Skolfield
 
 v.
 
 Potter, 2 Ware 402, Judge Wake says: “ This was a mere
 
 dictum,
 
 and the point was not necessarily involved in the cause. It may be true, that the cargo is not directly, but it certainly is indirectly bound for the wages; for it is a first principle of the maritime law that the cargo is bound to the vessel for the freight; and another, equally evident and undoubted, that the freight is pledged for the wages; indirectly, therefore, to the amount of the freight due upon it. the cargo is bound for the wages. The master is not obliged to deliver it, until the freight is paid or received; and if not paid, he may sell so much as is necessary to pay the freight. The seamen may, therefore, indirectly, through the master, proceed against the cargo itself, for thoir wages, to the amount of the freight due. When the owners of the ship are the owners of the cargo, the seamen’s claim on the freight can be enforced in no other manner but through the merchandise; and I see no objection, in principle or convenience, to allowing the seamen to do that directly, in their own name, what they may do indirectly, thrr gh that of the master.”