## Case No. 8,558.

### In re LOW et al.

### Ex parte BAKER et al.

[2 Lowell, 264.][1]

District Court, D. Massachusetts. June, 1873.

SEAMEN'S WAGES — FISHING VOYAGE — LIEN ON FISH—PURCHASER OF VESSEL—SUBROGATION—CHARGES.

1. Seamen engaged and serving for a fishing voyage have a lien on the fish for their wages.

2. Where the owners of a fishing-vessel became bankrupt, and afterwards the vessel arrived, and the assignees received the proceeds of sales of the fish,—*held*, they took them subject to the lien of the seamen.

3. Where the assignees sold a fishing-vessel for its full value, without taking into account any secret liens, and the purchasers were afterwards obliged, by a libel against the vessel, to pay wages of some of the fishermen for the preceding voyage,—*held*, the purchasers of the vessel were subrogated to the lien of the seamen against the fish and their proceeds, and might recover of the assignees such proportion of those proceeds as the wages so paid bore to the whole amount of wages.

[Cited in Story v. Russell, 157 Mass. 159, 31 N. E. 755.]

1 [Reported by Hon. John Lowell, LL. D., District Judge, and here reprinted by permission.]

4. In ascertaining the net proceeds of the fish, the assignees were permitted to deduct the necessary expense of recovering a part of the value from an adverse claimant, who had taken the fish by replevin from the possession of the assignees.

Petition by [J. Baker et al.] mortgagees of the fishing-schooner Florence Reed, of Gloucester, praying that the assignees in this case might be ordered to pay out to them a part of the money received for the sale of a fare of fish. The case was, that John Low & Son, the bankrupts, were in possesion of the vessel, and sent her on a voyage to the Grand Banks; and, before her return, the petition in bankruptcy was filed, and the marshal took possession of the schooner and her catch, and turned them over to the assignees, who sold a part of the fish and received the proceeds. The remaining fish were replevied by a writ out of a state court by Alfred & Sylvanus Low, who claimed title through an alleged sale of the catch; but the court decided against them, and ordered a return of the goods, and the assignees received their value from the sureties on the replevin bond. In the mean time, the assignees sold the equity of redemption in the schooner to the petitioners for $350; and afterwards the seamen proceeded against the vessel in admiralty for their wages, and recovered a decree, which the petitioners satisfied. The petition alleged that the fish, or their proceeds in the hands of the assignees, were subject to lien for the wages, and that the petitioners ought to be subrogated to the rights of the seamen. The contract between the bankrupts and the fishermen were for shares of the fish caught by them respectively.

J. C. Dodge and F. W. Choate, for petitioners, cited, to the point that there was a lien, Knight v. Parsons [Case No. 7,886]; Two Hundred and Ninety Barrels of Oil [Id. 14,294]; The Antelope [Id. 484]; and on the doctrine of subrogation, Story, Eq. Jur. §§ 499, 633, 634; Wall v. Mason, 102 Mass. 313; The William F. Safford, Lush. 69; The Tangier [Case No. 13,744].

S. B. Ives, for assignees.

LOWELL, District Judge. Although the fisherman is in many respects like a hired seaman, yet he has a right to say that the proceeds of the fish shall be appropriated to his payment; in other words, he has an equitable lien on the fish, subject, of course, to the absolute right of a solvent owner to convey and give an indefeasible title to the purchaser. It is very like the lien of seamen on the freight, which does not oblige a freighter to see to the application of his money; but, until a payment has been made, the lien may be enforced in the admiralty. The Antelope [supra]. A court of equity would, if necessary, require the assignees of a bankrupt to keep a separate account of the catch of a voyage coming into their hands,

and to pay out of it the several proportions due to the master and men. The jurisdiction is likewise vested in the court of bankruptcy, and does not, in my opinion, require a regular bill to be filed; and the parties here have not sought to interpose any technical objection.

The remaining question is, whether the petitioners, having been obliged to pay the wages or shares in order to save the vessel, are subrogated to the lien of the seamen against the fish. The equitable doctrine of subrogation, or substitution, is applied in a great variety of cases, and upon the broad ground that the money or property of one man has gone to pay the debt of another, and that in such case the person paying shall be entitled, in equity, to an assignment of all the securities of the creditor. See The Tangier [supra]. This is a right which the creditor cannot defeat; which nothing, indeed, can defeat but intervening equities. It has very often been applied for the benefit of purchasers. One of the simplest and most common cases is where a parcel of land is subject to an incumbrance, and part of it is sold for a full price, as being clear of incumbrances. The vendee can, in equity, require, as between himself and the vendor, the whole burden to be thrown on the part which remains unsold. That case is closely analogous to this. The difficulties which have arisen in the application of the rule, where the rights of several successive purchasers are in question, and which may depend upon a great variety of considerations, such as express or implied notice, need not engage our attention at this time, because this case presents the most elementary form of the doctrine. And the rule is worked both ways, for vendor or vendee, as the equities of their position may require. The seamen here had two securities; and, if the petitioners had bought the vessel under a contract which bound them to satisfy these debts, and the assignees had then been obliged to pay them, the latter would have the right to resort to the vessel itself, if the personal responsibility of the petitioners were inadequate or unsatisfactory; and if the petitioners, on the other hand, bought without notice, and with no allowance for secret liens, and have been obliged to pay them, they can resort to the fund which has come to the assignees, not in the mass of the bankrupt's assets, but in a distinct form, and with a charge fixed upon it for the payment of these debts. I understand it to be admitted, as matter of fact, that the vessel was bought for her full value, neither party remembering or having any regard to these liens; and the case is therefore made out. The right does not depend on the form of the bill of sale, whether a mere release or a deed with covenants; but that is only one kind of evidence. The true question is one of intent, to be gathered from all legal evidence. As the assignees have been put to expense in recovering the fund, they have a first charge upon it for their reimbursement; and this may prevent the petitioners recovering the full amount of their payments. The prayer of the petition is, that the assignees be ordered to pay over such proportion of the net proceeds received by them from the fish and from the replevin bond, as the shares of the fishermen who have been paid by the petitioners bears to the whole sum so received. Taking net proceeds to mean such as remain after deducting all necessary charges, including those of the replevin suit, the prayer is granted.