## THE MARION.

### TIBBOL et al. v. THE MARION.

(District Court, N. D. California. March 5, 1897.)

1. SEAMEN'S WAGES—LIEN ON CARGO BELONGING TO SHIPOWNER.
   Where the owner of the ship is also owner of the cargo, the seamen have a lien on the cargo for wages in the nature of a charge on the freight.

2. ADMIRALTY PLEADING—VERIFICATION OF LIBEL.
   Under rules 3 and 5 of the district court for the Southern district of New York, which were adopted by the district court for the Northern district of California, an amended libel to enforce an alleged lien on the cargo for wages need not be verified, when such cargo has been released on stipulation under the original libel, and libelants are beyond the jurisdiction.

This was a libel by J. T. Tibbol and others against the barkentine Marion and her cargo of 850 barrels of salmon, to enforce a claim for wages. The cause was heard on exceptions to an amended libel filed against the cargo.

H. W. Hutton, for libelants.
A. P. Van Duzer, for claimants of cargo.

MORROW, District Judge. This case comes up on exceptions to the second amended libel. The original libel was filed on October 27, 1896, and was brought against the barkentine Marion, her tackle, apparel, furniture, etc., and the cargo of said vessel, consisting of 850 barrels of salmon, to recover for seamen's wages. The libelants shipped on a fishing voyage from the port of San Francisco to Cook's Inlet, Alaska, and other Alaskan ports. They did not ship on a lay, but were to be paid a definite sum per month as

wages. No one appeared to claim the barkentine. The 850 barrels of salmon, the proceeds of the voyage, were claimed by C. E. Whitney & Co. as their property, and were released upon their giving a good and sufficient bond in the sum of $2,000. The vessel, not having been claimed, was sold by the United States marshal. The proceeds of the sale, however, were insufficient to satisfy in full the claims of the libelants for wages, and they now seek, by these supplementary proceedings, to obtain full satisfaction from the cargo—the 850 barrels of salmon caught on the voyage—for the several balances due them. For this purpose an amended libel was filed on November 17, 1896, seeking to reach and subject the cargo to the several deficiencies in favor of the libelants. Exceptions were presented to the amended libel, and, after hearing duly had, these were sustained. A second amended libel was thereupon filed on January 5, 1897, to which exceptions have again been presented. These exceptions raise two questions: (1) Whether the libel sets out any facts sufficient to entitle the libelants, or any of them, to any lien on the cargo or any portion thereof; (2) whether the libel should have been verified.

The second amended libel, after alleging that the libelants shipped as seamen and fishermen on board the barkentine Marion, the nature and extent of the voyage, the rate of wages, and the several amounts due them, less deductions for slops and advances, and the further fact that the vessel was, upon the original libel, sold to satisfy their claims, and that the amount realized was insufficient to pay in full their respective claims for wages, sets forth:

"Seventh. That at said Cook's Inlet, Alaska, the said owners of the said vessel caught, by and through the aid of the libelants, and as the property of the said owners, a large amount of salmon, which were salted, cured, and barreled by the said libelants for the said owners at said Cook's Inlet, and the said vessel proceeded from said Cook's Inlet to San Francisco with the said cargo on board, at which place the same was safely brought, libelants, and each of them, assisting to bring the same, as seamen on the said vessel; the total amount of salmon so caught, cured, barreled, and brought into San Francisco being 850 barrels, and at all of said times being the property of the said owners of said vessel. Eighth. That the said salmon owes freight money to the said vessel, which has not been paid, the freight money so owing being, as libelants are informed and believe, and on information and belief so aver the fact to be, the sum of $1,750, which said amount would be a reasonable sum as freight money for bringing the same into San Francisco as cargo of said vessel; and libelants aver that they further have a lien thereon for their services in catching, curing, barreling, and bringing the same into San Francisco as aforesaid."

The only question is whether, under these allegations, the libelants have a lien upon the cargo which will be recognized and enforced in the admiralty. The general rule with respect to the lien of seamen for their wages is that they have a lien upon the ship and freight. Pars. Mar. Law, 579; Brown v. Lull, 2 Sumn. 443, 452, Fed. Cas. No. 2,018. Rule 13 of the general admiralty rules of the supreme court provides that:

"In all suits for mariners' wages the libelant may proceed against the ship, freight and master, or against the ship and freight, or against the owner or master alone in personam."

It will be noticed that nothing is said in this rule about any proceeding against the cargo to enforce the lien. In the case of Sheppard v. Taylor, 5 Pet. 675, where it was sought to enforce the lien for seamen's wages upon the cargo, it was said by the court, through Mr. Justice Story:

"We think there is no claim whatsoever upon the proceeds of the cargo, as that is not in any manner hypothecated, or subjected to the claim for wages."

But it has been decided that where the owner of the ship is also the owner of the cargo, the seamen have a lien on the cargo in the nature of a charge upon the freight. Poland v. The Spartan, 1 Ware, 130, Fed. Cas. No. 11,246; Skolfield v. Potter, 2 Ware, 402, Fed. Cas. No. 12,925; In re Low, 2 Low. 264, Fed. Cas. No. 8,558; The Antelope, 1 Low. 130, Fed. Cas. No. 484; Story v. Russell, 157 Mass. 157, 31 N. E. 754. The reason for this is clear. The sailor has a paramount lien on the ship and freight. If the owners of the vessel be also the owners of the cargo, no freight eo nomine is earned, unless we assume that the owners of the cargo pay to themselves, as owners of the vessel, the freight which is due. The seamen, therefore, in such a case, would be deprived of any recourse against the freight, upon which, by the general admiralty law, they have a lien. As was said in Sheppard v. Taylor, 5 Pet. 675, "freight is the natural fund out of which seamen's wages are entitled to be paid." To protect the seaman against such a contingency, thereby depriving him virtually of his lien on the freight, the rule referred to in the cases cited has been evolved; that is to say, his lien upon the cargo is recognized and enforced where the owner of the ship is also the owner of the cargo. It is, in effect, a lien on the cargo for a charge in the nature of freight. Poland v. The Spartan, supra. I find nothing inconsistent with this doctrine in the case of Sheppard v. Taylor, supra, cited by counsel for claimant of the cargo. While it is true that the owners of the ship in that case were also the owners of the cargo, and no freight eo nomine was earned, still there were three distinct funds, representing respectively the value of the vessel, the cargo, and the freight. It is obvious, therefore, that no recourse could be had against the cargo. Nor can rule 13 be deemed to conflict with the views stated; for, while the rule says nothing about any proceeding against the cargo, yet the distinction must not be overlooked or confounded that the proceeding against the cargo, in this and other cases of a similar nature, is really against the freight which the cargo has incurred. As was aptly said by Judge Ware, in Poland v. The Spartan, supra:

"If the seamen can enforce their claim against the goods taken on freight, I see no reason, in principle, why they may not against the goods of the owner or charterer of the ship. The nature of their service is the same, and if it gives them a jus in re—if it creates a lien which adheres to the thing—it adheres to it, whoever may be the owner. Their own labor has been incorporated into the value of the merchandise in one case as it has in the other. The authorities go directly and fully to the point. The merchandise is declared to be hypothecated for wages, as well as the freight,—that is, as I understand the law, hypothecated to the wages to the amount of freight due upon it; and the merchant is not entitled to receive his goods until the lien is discharged."

I am of the opinion that the allegations of the second amended libel are sufficient to base a proceeding against the cargo to enforce the lien of the libelants for their balance of wages.

With respect to the verification of the libel as amended, rule 3 of the rules of the district court of the United States for the Southern district of New York, which were adopted as the rules of this court, provides:

"Libels (except on behalf of the United States) praying an attachment in personam or in rem, or demanding the answer of any party on oath, shall be verified by oath or affirmation."

Rule 5 provides that:

"Libels, informations, or petitions, praying a monition or citation only without attachment, need not be sworn to."

The libel, in its amended form, does not pray for any attachment, the cargo having been released upon a stipulation given therefor upon the original libel; nor does it require an answer under oath. As I understand that all the libelants are absent from the jurisdiction of the court, and the original libel was sworn to, I shall not require the amended libel to be sworn to in the absence of any special reasons therefor. The exceptions to the second amended libel will therefore be overruled.