### DAVIDSON v. AMERICAN STEEL BARGE CO.

(Circuit Court of Appeals, Sixth Circuit. February 3, 1903.)

#### No. 1,112.

1. COLLISION—DEVIATION OF TOW FROM COURSE—BURDEN OF PROOF.

Where it is shown clearly that the navigation of one of the vessels in a collision was proper, and that the collision was due to the deviation of the other, which was in tow, from the course of the towing steamer, the burden rests upon such tow to make such explanation as will free her from liability.

Appeal from the District Court of the United States for the Eastern District of Ohio.

Frank S. Masten, for appellant.
Herman A. Kelley, for appellee.

Before LURTON, DAY, and SEVERENS, Circuit Judges.

SEVERENS, Circuit Judge. The American Steel Barge Company, the appellee here, filed its libel in the District Court against the schooner Athens, charging it with damages inflicted by that vessel upon the barge No. 131, a vessel of the libelant, by the negligent management of the former vessel whereby they were brought into collision. Davidson, who is the appellant here, appeared as claimant, and answered, denying the fault imputed to the Athens, and filed a cross-libel charging the barge and the steamer in charge of her with the sole responsibility for the collision, and praying that the barge be condemned to pay the damages. In the District Court the libel was sustained, and the cross-libel was dismissed.

A tow of vessels belonging to the American Steel Barge Company, consisting of the steamer John B. Trevor, the barge No. 133, and the barge No. 131, were going up the St. Mary's river in the order in which they are here named, without cargo, on a voyage from Cleveland to Duluth. On the morning of July 2, 1897, at about half past 2 o'clock, the tow was approaching the foot of the lock on the American side of the Sault St. Marie. Shortly prior to this a tow of vessels belonging to the appellant, consisting of the steamer Rappahannock, the barge Algeria, and the Athens, had been coming down in that order, from the opposite direction, loaded; and after getting through

the lock and straightening up below was moving down slowly, seeking a place in which to tie up until the weather should clear. A heavy mist or haze was on the surface of the water, though not so dense as to prevent navigation if it was conducted with due caution. But there was a place below, at the turn of the Little Rapids, where the navigation was more difficult, and hence the precaution of waiting for better light. There was no wind, and the night was not dark except for the low-lying mist or haze just mentioned. The vessels of the tows were each about 300 feet long, the steamers a little longer, and the rear barges were on hawsers about 300 feet long. Other vessels were in the water, and the docks along down on the American side were pretty fully occupied.

As the steamers approached each other they agreed, by a signal of one blast, to pass to the right. The steamers did so at a proper distance from each other. Up to this point the location of the vessels of the two tows appears to have been free from fault. There is nothing in the evidence which induces us to doubt that the tows and all the vessels thereof were at a safe distance from each other, and that there was no special danger to be apprehended. In respect to what ensued there is an irreconcilable conflict in the testimony. An illustration of it is found in what relates to a question of fact so bald as this: whether the Algeria was at the time the tows were passing each other lying abreast and on the port side of the Rappahannock, with the Athens trailing behind her, or whether all three of that tow were straightened out in line except while the Athens was on the course which resulted in the collision. But fortunately the salient facts are easily enough seen, and we are relieved from the necessity of attempting to harmonize the proof relating to the smaller details.

The substantial facts are that at about the time the barge No. 131 was passing the Rappahannock the tug L. B. Smith came along the port side of that barge, and, lines being fastened to her, brought her forward along the port side of No. 133, preparatory to their being put into the basin of the lock, and was proceeding to push both vessels to starboard for proper position to enter the lock. The Athens was coming down on a slackening tow line, and sheered off toward the tug and the tow it was trying to assist. Seeing the Athens coming, the tug fell back. Then No. 131 fell back also, until she was behind No. 133, where she was struck a glancing blow on the port bow by the Athens, which had not recovered herself. The stem of No. 131 was carried to starboard by the impact of the Athens, and she was again hit amidships by the latter vessel as they passed.

1. There is no proof which we can think impeaches the movements of the Trevor and the vessels in that tow. The utmost that can be said is that some of the officers on those vessels did not know some conditions and events that with sharper observation they would have known. But nothing which they failed to observe contributed to the disaster. And it is fair to remember that almost to the moment when the mischief happened there was nothing to indicate danger or stimulate unusual observation.

2. The navigation of the vessels of the libelant being proper, and the irregular and damaging conduct of the Athens being clearly

shown, it was incumbent upon her to make such explanation as should free her from liability. The F. W. Wheeler, 24 C. C. A. 353, 78 Fed. 824; The Ohio, 33 C. C. A. 667, 91 Fed. 547; The Fontana (C. C. A.) 119 Fed. 853. This she has not done. In her answer and in the cross-libel, it was charged that the speed of the Trevor was too great, and that not only that vessel, but those in her tow, crowded too far over towards the American shore. But neither of these defenses is made out.

It would not be difficult, if it were open upon the pleadings to do so, to conclude that the sheer of the Athens which brought the vessels into collision was the result of her being left by her steamer without proper steerage way. There is much in the case to produce the impression that the Rappahannock was moving very slowly, and that her tow was, in consequence, somewhat collapsed. But the answer of the Athens insists that she maintained a proper position, though her headway was only "sufficient for her to swing very slowly," and her captain testifies that she had sufficient headway. The testimony of the mate points to a different conclusion. The District Court held that the Athens was at fault in not porting her helm in obedience to the signals for passing, and also in not employing a tug to assist her in her navigation. If she had sufficient headway, the reasonable conclusion is that her helm was not properly attended to.

No explanation of her erratic and dangerous course being given by the Athens sufficient to justify or excuse it, the decree of the District Court holding her responsible for the damages was right, and it is affirmed.