## THE DAUNTLESS.

### (District Court, N. D. California. February 19, 1903.)

### No. 12,290.

1. COLLISION—STEAMERS MEETING IN NARROW CHANNEL—VIOLATION OF RULES.

A steamer passing down a river met two steam launches made fast together. The steamer gave a signal of two whistles, and, receiving no answer, starboarded her helm, and turned toward the left-hand side of the channel, a collision occurring shortly afterward, in which both launches were sunk and the persons on board drowned. *Held*, that the steamer was in fault for failing to have a lookout, and for violation of article 25 of the inland navigation rules (30 Stat. 101 [U. S. Comp. St. 1901, p. 2883]), requiring every steam vessel in narrow channels, when safe and practicable, to keep to that side of the channel which lies on her starboard side; and that, in the absence of evidence that it was not safe and practicable to do so, or of credible evidence of fault on the part of the launches, the collision must be attributed solely to such fault of the steamer.

2. WRONGFUL DEATH—MEASURE OF DAMAGES RECOVERABLE—CALIFORNIA STATUTE.

Under Code Civ. Proc. Cal. § 377, authorizing actions to recover damages for wrongful death for the benefit of the next of kin, and the recovery of such damages as, under all the circumstances of the case, may be just, the ages and expectancy of life of the beneficiaries, where they were dependent in whole or in part on the deceased, may properly be taken into account in fixing the damages.

In Admiralty. Suit to recover damages for death in collision.

F. R. Wall, Marshall B. Woodworth, and E. J. Banning, for libelant.

Campbell, Metson & Campbell, for claimant.

¶ 2. See Death, vol. 15, Cent. Dig. § 113.

DE HAVEN, District Judge.   This action was brought against the steamer Dauntless by Sharon P. Doane, as administrator of the estate of John T. Doane, deceased, to recover damages for the death of said deceased, caused by a collision between that steamer and a steam launch of which the deceased was master.   The collision occurred on the night of September 14, 1900, on the Mokelumne river.   The steamer at the time was proceeding down the river, and the steam launch was going up against the current and tide, made fast to the side of another launch, which she was towing.   The launch, when sighted by the steamer, was about a half mile distant, and on the starboard side of the steamer.   When the launch was sighted, the steamer gave two blasts of her whistle, and, without receiving any answer from the launch, put her helm to starboard, and swung toward the opposite bank of the river.   The launch kept its course and struck the starboard side of the steamer just forward of the gangway, and immediately sank. There were three persons in the launches, all of whom were drowned, and the only witnesses who testify in relation to the collision are those who were on the steamer at the time.

My conclusion from the evidence is that the steamer Dauntless was in fault in two particulars:  First, she did not have a lookout stationed at her bow immediately preceding the collision; second, the steamer, in starboarding her helm and attempting to pass the launches near the left-hand bank of the river, violated article 25 of the act of June 7, 1897, "for preventing collisions upon certain harbors, rivers, and inland waters of the United States."   30 Stat. 101 [U. S. Comp. St. 1901, p. 2883].   The article is as follows:

"In narrow channels every steam-vessel shall, when it is safe and practicable, keep to that side of the fair-way or mid-channel which lies on the starboard side of such vessel."

In commenting upon this article, it is said in Hughes on Admiralty, p. 250:

"This is really a branch of the port-helm rule.  The latter rule applies when the vessels are meeting end on, no matter whether they are in a harbor or a narrow channel, no matter whether they are following a channel or crossing it.  The starboard-hand rule emphasizes this duty as to narrow channels.  It means that each must keep along its own right-hand side, no matter how the relative bearings may be from sinuosities or other causes."

The Mokelumne river is a narrow channel within the meaning of this rule, and, while it may be true that the channel was deepest near the left bank of the river, still the evidence does not satisfy me that it was not practicable for the steamer to have kept on the right-hand side of the river, and the burden of showing that she could not have done so with safety is upon her.   The steamer, being in fault in the respects mentioned, is responsible for the collision, unless the evidence is such as to clearly show that it was due to some other cause, for which she is not responsible, or that the negligence of the deceased contributed thereto.   The principle applicable here is thus stated by the Supreme Court in the case of The Pennsylvania, 19 Wall. 125, 22 L. Ed. 148:

"The liability for damages is upon the ship or ships whose fault caused the injury.  But when, as in this case, a ship at the time of a collision is in actual violation of a statutory rule intended to prevent collisions, it is no

more than a reasonable presumption that the fault, if not the sole cause, was at least a contributory cause of the disaster. In such a case the burden rests upon the ship of showing not merely that her fault might not have been one of the causes, or that it probably was not, but that it could not have been. Such a rule is necessary to enforce obedience to the mandate of the statute."

The evidence is not, in my opinion, sufficient to show that there was any other cause for the collision than the fault of the steamer in starboarding her helm when approaching the launch, and in not maintaining a proper lookout. The evidence is not very satisfactory as to the precise manner in which the collision occurred, but I am unable to accept the statement of the pilot of the steamer that the launches came "straight up in the middle of the river, almost," and when they got abreast of the steamer "they whipped right around and headed right straight for the Dauntless." Although this statement is not contradicted by any witness it appears to me to be so unreasonable that the court would not be warranted in finding that such was the fact. There is some force in the argument that the collision could not have occurred without contributory negligence upon the part of the deceased, who was in charge of the launches; that the steamer ought to have been seen, and the course upon which she was going observed by him in ample time to have enabled the launches, which were small, and easily managed, to have avoided the steamer. The answer to this contention is that it does not appear with certainty that the deceased had time to avoid the danger after it became evident that the steamer's course was changed. The launches were on the proper side of the channel, and were not required to change their course until it was apparent that there was a necessity for so doing. It is not improbable that the collision occurred while the steamer was swinging to port, and before those on the launches had time to fully realize the danger of their position.

There remains for consideration only the question of damages. The action is based upon section 377 of the California Code of Civil Procedure. "This statute," as was said by the court in the case of The California Nav. & Imp. Co. (D. C.) 110 Fed. 670, "does not authorize damages to be given for the suffering of the deceased, nor for grief and sense of bereavement upon the part of the surviving relatives. Only the direct pecuniary loss to the heirs of the deceased can be considered in estimating the damages which may be recovered in actions under this statute. Morgan v. Southern Pac. Co., 95 Cal. 510, 30 Pac. 603, 17 L. R. A. 71, 29 Am. St. Rep. 143. The language of the statute is that 'such damages may be given as, under all the circumstances of the case, may be just.' This, in effect, means that the damages shall rest in the sound discretion of the court or jury; a discretion to be exercised in view of the fact 'that such damages are to be measured by what shall fairly seem the pecuniary injury or loss to the plaintiff.' Morgan v. Southern Pac. Co., 95 Cal. 501, 30 Pac. 601; In re Humboldt Lumber Mfrs.' Ass'n (D. C.) 60 Fed. 428." It is shown that the deceased was about 41 years of age, and in good health; that he left dependent upon him a father 73 years of age, a mother aged 72 years, and a sister 22 years of age. The sister is an

invalid, suffering from a spinal disease. For some years prior to and up to the time of his death the deceased earned $100 per month, of which he had given his father, for the support of the family, about $40 a month. The American Tables of Mortality show that the life expectancy of deceased was 27½ years, or thereabouts; but the life expectancy of those dependent upon him is a material fact in this case. The question is, what pecuniary damages have they sustained by his death, and it is manifest that the damages must be less when the life expectancy of the surviving dependent relatives is only a few years than could properly be awarded in a case in which the life expectancy of the surviving relatives is for a longer period of time. The life expectancy of the mother of the deceased is only about 7½ years, that of the father less, and that of the invalid sister a matter wholly of conjecture. Taking into consideration all of the facts bearing upon the question of damages, libelant is, in my judgment, entitled to recover the sum of $1,200 and costs.

Let a decree for that amount be entered.