## THE ADMIRAL SCHLEY. THE CHARLES F. MAYER.

### CONSOLIDATION COAL CO. v. AMERICAN MAIL S. S. CO. (two cases).

(Circuit Court of Appeals, First Circuit. October 14, 1905. On Rehearing, December 7, 1905.)

#### Nos. 513, 514.

COLLISION—STEAMER IN FOG.

 Former opinion, holding each of two steamers in fault for a collision in a fog outside Boston Harbor, affirmed on rehearing.

 [Ed. Note.—Collision rules as to speed of steam vessels in fog, see note to The Niagara, 28 C. C. A. 532.]

On petition for rehearing. Rehearing granted, and judgment affirmed.

For former opinion, see 131 Fed. 433.

Edward S. Dodge and J. Walter Lord, for appellant.

Eugene P. Carver and Wilhelmus Mynderse (Edward E. Blodgett, on the brief), for appellee.

Before COLT and PUTNAM, Circuit Judges, and ALDRICH, District Judge.

PER CURIAM. In these cases we passed down an opinion and a judgment on July 6, 1904, affirming the decree of the District Court which was to the effect that both vessels were in fault, and which ordered a consequent division of damages. That opinion states the facts sufficiently. The Charles F. Mayer has now filed a petition for rehearing. The most material proposition of the petition is that we "misunderstood the position, or locality of the collision." The captain of the Charles F. Mayer testified that it was about "a mile to the westward of Boston Lightship," and Capt. Butman that it was about "a mile and a half to the eastward of Thieves Ledge Buoy." As stated in our opinion, we intended to dispose of the case on facts admitted by the Charles F. Mayer or shown by official publications, or commonly known. As there was no dispute in regard to the testimony of the captains in this particular, we adopted the natural result of the two statements, and located the collision east of Thieves Ledge Buoy and west of Boston Lightship, using the terms "east" and "west" in the way they are ordinarily used, and therefore, of course, not intending to insist that the points of the compass were either "due east" or "due west." We therefore did not hesitate to assume that the point of collision was as thus stated.

This, however, related particularly to the location of the point of collision with reference to an east and west line. It did not assume to relate, and did not relate, to its location with reference to a north and south line. As, however, there was no contention that the Schley had taken a course northerly of the course admitted by the captain of the Charles F. Mayer to be the usual course of vessels of the class of the Schley, running out of Boston on her voyage in thick weather, we assumed such to be the fact. The master of the Mayer admitted that a steamer "bound for Cape Cod" "or to the West Indies" "in a fog," "coming out from Boston," "would usually go near, or head towards Boston Lightship, if she could hear its whistle." Also, on being asked whether the Schley was heading towards the Boston Lightship, he answered: "I didn't have any idea how she was heading, only that she was heading about that way." Therefore we concluded that the locality of the collision stated by the masters of the two steamers established that the course of the Schley must also have been as described by the master of the Mayer; in other words, that it was, at least to some degree, southerly of the line from Thieves Ledge Buoy to the Boston Lightship.

It is true that, in describing the courses of the Mayer, we accepted them as stated by her captain, although these were not the courses

described in her libél. We expressed these courses as worked out by ourselves; but this, of course, was subject to the general observation which we have already made, that we were taking the facts as admitted by the Mayer. Therefore, we made no investigation of the entire record on this topic, nor any attempt to reconcile the courses as given by the master of the Mayer with the locality of the collision, which we have already said we assumed was not disputed by the parties. The petition for rehearing raises for the first time a serious question as to the locality of the collision, and this to the extent that, if the testimony of the master of the Mayer as to the courses which he ran, and the length of time he ran them, is to be taken in connection with the observations now made in the petition for rehearing, the question would arise whether, after all, the Schley must not have been running on a course which would have brought her northerly of the Boston Lightship, or on some other course than that which we assumed as we have already stated. The locality of the collision in this respect is certainly a matter of grave importance, if not, as maintained by the Charles F. Mayer, a fundamental one. Therefore, we especially desire briefs, as stated in the order passed down herewith. We must observe, however, that briefs will be of no avail unless prepared with careful attention to details, and a clear exposition of the facts with reference to the record as required by our rule. As soon as practicable after the expiration of the period for filing briefs contained in the order accompanying this memorandum, the court will desire an oral reargument.

We will observe that one of his early courses, as stated in the testimony of the master of the Charles F. Mayer, was east southeast. At the bar we were told this course was south southeast, and so it stands in our opinion. Whether this is a matter of consequence we at present have no occasion to observe; but we deem it proper to call the attention of counsel to the apparent discrepancy.

Ordered: A rehearing is granted on all the questions on both appeals; and each party may file an additional brief on or before the 22d day of October current.

## On Rehearing.

PUTNAM, Circuit Judge. On each of these appeals we entered a judgment on July 6, 1904, affirming the decrees of the District Court; the same being accompanied with an opinion fully explaining our views in reference thereto. On October 14, 1904, on a petition in behalf of the Charles F. Mayer, we granted a rehearing reaching the entire case, but calling particular attention to the question whether the Schley was not running on courses which brought her northerly of the Boston Lightship, or on some other course than that which we assumed according to our opinion of July 6th. Accordingly, the appeals have been carefully reargued by counsel, both orally and with briefs, and all the same have received our thorough consideration. We need make no observations except with reference to two points, which are pressed on us more clearly than when the appeals were heard on their merits. They were urged by the Charles F.

Mayer as follows: First, that the Schley was running northerly of the course which we referred to, so that the place of the collision was northerly of the locality which we assumed for it in the opinion of July 6th; and, second, it was brought carefully to our attention that the Schley did not stop when she heard the first faint whistle of the Mayer, as she should have done under the International Rules.

As to the first proposition, there are certain undoubted obscurities and certain conflicting statements whether looking at the entire record or looking at the facts as presented by one party or the other; but, on the whole, the testimony of Capt. McLeod of the Mayer, with reference to the bearing of the Thieves Ledge Buoy just prior to the collision, left the locality of the collision as we had already assumed it to be. Moreover, it is to be noted that it was made clear by our opinion that the usual course in a fog of a steamer bound out as the Schley was, was, at the beginning, east by south, and then to pick up the lightship, the latter of which courses would be east or possibly a little north of east. It is certain, also, that the Schley starboarded just before or just after she sighted the last barge of the tow. When the Schley sighted her the barge was on the Schley's starboard. If she was sighted before the Schley changed her course, all must concede that the Mayer was in fault, as we found her to be, because in that event, wherever the Mayer was, her tow was strung across the usual course out of Boston under the circumstances; and the same occurred, even if the Schley starboarded before she sighted either barge, because on her testimony, from which alone is drawn the proof that she starboarded at all, she came about only one point before she sighted both barges, leaving both on her starboard.

In regard to the fact that the Schley did not stop as she should have done when she heard the first faint whistle from the Mayer, as the last paragraph of the International Rule 16 required her to do, the Mayer violated the same rule. Consequently, on this point, the vessels were mutually at fault; while, moreover, inasmuch as the Mayer ran her bow into the Schley under such circumstances that it is clear that, if she had run a few feet less, there would have been no collision, it is equally clear that if either vessel had obeyed the International Rules no injury would have resulted. It is true that it is sometimes difficult for a tug having a long tow to stop; but in this case the difficulty was of the Mayer's own making. Therefore, so far as rule 16 is concerned, not only must each vessel be held guilty of a contributory fault, in accordance with The Pennsylvania, 19 Wall. 125, 136, 22 L. Ed. 148; but it is also apparent that, except for the mutual fault of both vessels in this respect, there would have been no occasion for this litigation. It follows that the judgments heretofore entered by us must be renewed. Therefore, in No. 514, The Charles F. Mayer, the following judgment will be entered, and like judgment, omitting the words "with interest, except from February 1, 1905, to December 7, 1905," in No. 513, The Admiral Schley.

It is ordered, adjudged, and decreed: Whereas, after a hearing on the merits, a judgment was entered on this appeal on July 6, 1904, and afterwards a petition for a rehearing was seasonably filed and

allowed, whereby the said judgment was vacated; and whereas the matter of said petition for rehearing has now been fully heard and duly considered by the court; and whereas the court is unanimously of the opinion that there is no cause for entering a judgment other than that which was heretofore entered as aforesaid, except that interest should not be allowed from February 1, 1905, to December 7, 1905:

Therefore it is now further ordered, adjudged, and decreed that the decree of the District Court is affirmed, with interest, except from February 1, 1905, to December 7, 1905, and the appellee recovers its costs of appeal.