THE BEAVER (two cases).

PORTLAND & A. S. S. CO. v. SAN FRANCISCO & P. S. S. CO.

(District Court, N. D. California. June 26, 1912.)

Nos. 15,099, 15,130.

COLLISION (§ 83*)—STEAM VESSELS MEETING—FOG—VIOLATION OF RULES. .

A collision occurred in a fog outside the entrance to San Francisco Bay between the steamships Selja, returning from an oriental voyage, and Beaver, which had just left the port. The Selja heard the fog signals of the Beaver, apparently ahead, 16 minutes before the collision, and they were repeated at intervals of 55 seconds afterwards, but she continued at full speed for 5 minutes, and at half speed for 5 minutes more, before stopping her engines. The Beaver was admittedly in fault for proceeding at too great speed. *Held*, that the Selja was also in fault for violation of the positive provisions of article 16 of the International Rules (Act Aug. 19, 1890, c. 802, 26 Stat. 326. [U. S. Comp. St. 1901, p. 2869]) which required her on hearing the signal of the vessel ahead, whose position was not known to her, to at once stop her engines and navigate with caution until danger of collision was over, which violation was repeated when each succeeding signal was heard.

[Ed. Note.—For other cases, see Collision, Cent. Dig. §§ 156, 167, 175; Dec. Dig. § 83.*

Signals of meeting vessels in collision, see note to The New York, 30 C. C. A. 630.]

In Admiralty. Olaf Lie, master of the Norwegian steamship Selja, against the steamship Beaver; San Francisco & Portland Steamship Company, claimant. Two suits for collision. Also, suit by Portland & Asiatic Steamship Company against San Francisco & Portland Steamship Company. Decree holding both vessels in fault.

McClanahan & Derby, of San Francisco, Cal., for the Selja.

Andros & Hengstler, of San Francisco, Cal., for cargo.

William Denman and Page, McCutchen, Knight & Olney, of San Francisco, Cal., for the Beaver.

BEAN, District Judge. These are three causes against the steamship Beaver consolidated for trial. The main suit is brought by the master of the Norwegian steamship Selja on behalf of her owner, officers, and crew to recover for the loss of the Selja, her equipment, and the personal effects of the officers and crew. The second is brought by way of an intervening libel on behalf of the owners of the cargo. The third is an independent suit in persona brought by the charterers of the Selja against the owners of the Beaver to recover for loss of freight.

At 3:16 o'clock on the afternoon of November 22, 1910, the Selja was sunk in a collision with the Beaver in a fog off the entrance to San Francisco Harbor, and the only question for decision at this time is the liability for such collision. It is admitted that the Beaver was at fault because she was navigating at an immoderate rate of speed at the time, but it is claimed on her behalf that the Selja was also at fault, and as a consequence that the damages should be divided.

A vast amount of testimony has been taken, elaborate arguments were made, and briefs filed discussing many interesting and important questions of law and fact, with marked ability and learning; but, in my judgment, the point at issue can be decided by the application of the law to facts admitted by the Selja. The Selja in command of Capt. Lie was returning from an oriental voyage, and at 3 p. m. on November 22d, while enveloped in a dense fog a few miles off the entrance to San Francisco Harbor, and while going at a speed of six knots an hour, heard "seemingly dead ahead" a deep distinct whistle, which the captain first mistook for the fog whistle at Point Bonita, but which proved to be that of the Beaver on her regular voyage from San Francisco to Portland. Without stopping her engines or changing her course or speed, she continued on her course from 3 to 3:05 towards the whistle which was being repeated at intervals of 55 seconds. At 3:05 she put her engines to slow speed, the whistle being repeated at regular intervals coming "seemingly nearer"; but she did not know at that time where the whistle was, nor what it signified, nor was its position ascertained except, as the captain says, "as well as could be in a fog." From 3:05 to 3:10 she continued in the direction of the whistle, dropping her speed from 6 knots at 3:05 to 3½ or 4 knots at 3:10. At 3:10 her navigating officer first concluded that the whistle which he had been hearing at intervals of 55 seconds for the past 10 minutes was that of an approaching steamer and stopped his engines, allowing the momentum of the vessel to carry her forward. At 3:13 the Beaver loomed up out of the fog a short distance away, and at 3:16 the collision occurred.

Under these admitted facts the Selja was, in my opinion, clearly at fault for a violation of the second paragraph of rule 16, regulating the navigation of vessels at sea (Act Aug. 19, 1890, c. 802, 26 Stat. 326 [U. S. Comp. St. 1901, p. 2869]), if not for a failure to maintain that rate of speed in a fog required by the law as laid down in the Belgian King, 125 Fed. 869, 60 C. C. A. 451. Rule 16 provides that:

"A steam vessel hearing, apparently forward of her beam, the fog signal of a vessel the position of which is not ascertained shall, so far as the circumstances of the case admit, stop her engines and navigate with caution until the danger of collision is over."

The Selja heard a whistle apparently forward of her beam at 3 o'clock, but continued her voyage for 5 minutes in the direction of the whistle without reducing her speed, and for 10 minutes without stopping her engines, notwithstanding she continued to hear 5-second automatic blasts of an approaching whistle at 55-second intervals, and without knowing either its position or distance. She thus not only failed to observe the rule on hearing the first whistle, but repeatedly violated it at practically 1-minute intervals for the succeeding 10 minutes. She was apparently navigating under former article 18 of the Revised International Regulations. (Act March 3, 1885, c. 354, 23 Stat. 441), which required a vessel approaching another "so as to involve risk of collision, to slacken her speed or stop or reverse if necessary," and under which it was held that a steamship in a fog was

not obliged to stop her engines on hearing the first whistle ahead, unless the proximity be such as to indicate immediate danger. The Umbria, 166 U. S. 404–412, 17 Sup. Ct. 610, 41 L. Ed. 1053; The Ludvig Holberg, 157 U. S. 60, 15 Sup. Ct. 477, 39 L. Ed. 620; The Blue Jacket, 144 U. S. 371, 12 Sup. Ct. 711, 36 L. Ed. 469. This rule did not require any specific act to be done or left undone in a given case, but only the exercise of good judgment and seamanship; but rule 18 has been superseded by rule 16, which imposes a positive duty upon a vessel hearing apparently forward of her beam the fog signal of a vessel, the position of which is not ascertained, to immediately stop her engines and then navigate with caution. It is no longer a question whether the master exercises good judgment in a given case, but his conduct is governed by positive law.

The respondent claims that rule 16 should be so interpreted that the requirement to stop the engine is not obligatory if the position of the approaching vessel is ascertained "with reference to danger of collision by an approximate of accuracy"; but this would leave the law substantially the same as it was prior to the adoption of the rule, and would not accomplish the purpose intended by its enactment. It was designed to take away from a vessel the right to proceed at all, after hearing the first signal, without first stopping the engines to enable those in charge to ascertain the position of the signaling vessel. It recognizes the difficulty of ascertaining from the sound of a whistle the exact position, and especially the course and distance of a vessel in a fog. It therefore does not leave the navigation of a vessel, when a whistle is heard apparently forward of her beam, the position of which is not ascertained, to the master's judgment, but assumes that the zone of danger of collision is reached when the whistle is heard, and forbids the ship to enter such zone except after stopping its engines to ascertain the position of the oncoming ship. It defines in positive terms the master's duty in such cases. The El Monte (D. C.) 114 Fed. 796; The Rondane, 9 A. S. P. M. C. 108; The Brittania, 10 A. S. P. M. C. 67; The St. Louis, 98 Fed. 750, 39 C. C. A. 201; The Admiral Schley, 142 Fed. 64, 73 C. C. A. 250.

It is said, however, that the first whistle heard by the master of the Selja sounded a long way off, and the apparent distance thereof, as heard by him, showed absolutely no danger of collision prior to 3:10, and therefore the location of the Beaver was ascertained within the meaning of rule 16. The same argument was urged in some of the cases above referred to but without effect. As said in The Brittania:

"It is not true that because a whistle sounds distant those on the ship hearing it are entitled to treat it as distant. Many cases in this court have shown that an approaching distant sounding whistle is really close. Again, it is not correct to say that a whistle having been heard can be located so as to ascertain it is at a precise bearing on the bow. * * * If this court were to hold that, upon hearing a whistle which sounded to be distant, a vessel was justified in not stopping, although its position was not ascertained except that it sounded a long way off, every case in this court would be that the whistle sounded such a long way off that the ship was justified in not stopping."

Capt. Lie of the Selja admits that the whistle was nearer than he thought, and the evidence shows that he was mistaken as to the course and distance of the oncoming vessel. His mistake illustrates the necessity and reason for rule 16. If, after hearing the whistle, he chose to take chances when the law directed him to make sure, his vessel is not exempt from liability on the ground of his unintentional error.

It is also claimed that, even if the Selja was at fault in not obeying rule 16, such fault was not a contributing cause to the collision. The law is that, where a vessel has committed a positive breach of a statutory duty, she must show not only that probably her fault did not contribute to the disaster, but that it could not have done so. The Pennsylvania, 19 Wall. 125–136, 22 L. Ed. 148; The Ellis, 152 Fed. 981, 82 C. C. A. 112; Davidson v. American S. B. Co., 120 Fed. 250, 56 C. C. A. 86; The Dauntless (D. C.) 121 Fed. 420; The Admiral Schley, 142 Fed. 64, 73 C. C. A. 250; Hawgood Tr. Co. v. Mesaba S. S. Co., 166 Fed. 697, 92 C. C. A. 369. The Selja has not sustained this burden. Indeed, it is quite apparent that, if she had observed the rule, she would not have reached the point of collision at the time she did, and the Beaver would have passed her. Nor is there room here for the application of the so-called major and minor fault doctrine. Both vessels were equally at fault. The Beaver violated the first part of rule 16 by going at an immoderate rate of speed, and the Selja was at fault for failing to observe the latter clause of the rule. One was as great a breach of duty as the other. The Beaver ran into a dense fog a short time before the collision, and should, of course, have slackened her speed. She did not hear the Selja's whistle until about 3:13, and upon hearing it immediately reversed her engines full speed astern; but it was then too late to avoid the collision. The Selja was in the fog at 3 p. m. and had been for some time prior. She heard the Beaver's whistle at 3 o'clock and continuously from that time until the collision, and yet she did not slacken her speed for 5 minutes after hearing the first whistle nor stop her engines until 10 minutes thereafter. She apparently acted on the theory that it was not necessary to stop her engines until the repeated whistles of the oncoming steamer had unmistakably shown her that danger of collision was imminent if not unavoidable.

The court cannot say, under these circumstances, that the fault of the Beaver was so grievous that the fault of the Selja should not be taken into account. The importance of enforcing the law as embodied in rule 16 compels me to adjudge both vessels at fault.