## THE BEAVER. †

### (Circuit Court of Appeals, Ninth Circuit. January 4, 1915.)

### No. 2365.

COLLISION ⊜⇒82—STEAMSHIPS IN FOG—VIOLATION OF RULES.

Article 16 of the International Rules (Act Aug. 19, 1890, c. 802, § 1, 26 Stat. 326 [Comp. St. 1913, § 7854]), providing that a steam vessel hearing, apparently forward of her beam, the fog signal of a vessel the position of which is not ascertained, shall, so far as the circumstances of the case admit, stop her engines, and then navigate with caution until danger of collision is over, imposes a positive duty, and, where a vessel violates the rule and a collision follows, she cannot avoid liability without showing, not merely that her fault probably did not contribute to the collision, but that it could not have done so.

[Ed. Note.—For other cases, see Collision, Cent. Dig. §§ 170–174; Dec. Dig. ⊜⇒82.

Collision rules, speed of steamers in fog, see note to The Niagara, 28 C. C. A. 532.]

Appeal from the District Court of the United States for the First Division of the Northern District of California; R. S. Bean, Judge.

Suit for collision by Olaf Lie, master of the Norwegian steamship Selja, on behalf of himself and the owners, officers, and crew, against the steamship Beaver; the San Francisco & Portland Steamship Company, claimant. From the decree, libelant appeals. Affirmed.

For opinion below, see 197 Fed. 866. See, also, 219 Fed. 139, 135 C. C. A. 37.

E. B. McClanahan, S. H. Derby, and Louis T. Hengstler, all of San Francisco, Cal., for appellant.

William Denman and Ira A. Campbell, both of San Francisco, Cal., for appellee.

McCutchen, Olney & Willard and Denman & Arnold, all of San Francisco, Cal., advocates.

Before GILBERT and ROSS, Circuit Judges, and VAN FLEET, District Judge.

ROSS, Circuit Judge. The record in this case is very voluminous and has been very carefully examined, as have also been the elaborate and able briefs of the respective parties. The case grew out of a collision between the steamships Selja and Beaver near Point Reyes

<hr>

on the coast of California. The collision resulted in the sinking of the Selja and the bringing of three suits against the Beaver—the main one by the master of the Selja on behalf of her owner, officers, and crew, to recover for the loss of the ship and her equipment and for the loss of the personal effects of her officers and crew; the second, an intervening libel on behalf of the owners of the Selja's cargo; and, the third, an independent suit by the charterers of the Selja against the owners of the Beaver to recover for loss of freight. The three cases were consolidated and tried together, resulting in both vessels being held in fault by the trial court and in an interlocutory decree providing, among other things, that the damages sustained by them be apportioned under the usual rule of cross-liabilities, subject to certain specified offsets; that the master of the Selja have and recover from the Beaver on behalf of the officers and crew of the Selja, excluding himself, the full damages suffered by them, without offset of any kind, and also have and recover from the Beaver on behalf of the owners and underwriters of the cargo of the Selja the full damages sustained by its cargo, without offset of any kind, and reserving for final adjudication other questions of damages until after proofs should be taken before a commissioner, to whom the cases were referred for the purpose of taking such proofs, ascertaining and computing the damages in accordance with the interlocutory decree, and with directions that he report to the court such damages, together with all of the evidence produced before him.

Subsequent to the making of the order of reference, the respective parties entered into such stipulations and agreements as enabled the trial court to fix the various items of damage as a matter of law, which it did in and by the following finding:

1. Cargo owners...................................................... $260,344 41
2. Officers and crew of Selja:
    Alfred Halvorsen, 1st officer................................. 643 50
    Alfred Larsen, 2d officer..................................... 372 00
    Arvid Bjorn, 3d officer....................................... 249 90
    Rambek Eggen, Chief engineer................................. 458 28
    Axel Andersen, 2d engineer................................... 349 30
    Pedar Hansen, 3d engineer.................................... 292 50
    Wong Hai, steward............................................ 791 10
    Choi Hoy, carpenter.......................................... 284 75
3. Damages of Olaf Lie, master of the Selja..................... 1,973 23
4. Damages of William Jebsen, owner of the Selja:
    Value of the Selja exclusive of the items hereinafter mentioned ..................................................... 171,000 00
    Spare gear of the Selja....................................... 3,056 00
    Engine-room stores of Selja.................................. 951 51
    Deck-room stores of Selja.................................... 950 63
    Provisions for Chinese crew of Selja.......................... 261 45
    Cost of keeping Chinese crew in San Francisco, pending their return to China............................................ 160 63
    Cost of returning Chinese crew to China...................... 1,771 20
    Cost of maritime declaration made by the master of the Selja 43 00
5. Damages to the Beaver....................................... 31,829 18
6. Damages of the Portland & Asiatic Steamship Company, charterer of the Selja:
    For loss of pending freight................................... 10,742 21
    Bunker coal, flour slings, etc................................ 3,209 04

It was admitted that the several amounts above specified should bear interest at 6 per cent. per annum from the date of the collision to the entry of the final decree, and that the cargo owners and the officers and crew of the Selja, other than her master, were entitled to judgment against the Beaver for their full damages without offset, and that the damages of the owner and master of the Selja and of the Beaver be apportioned, "and that, if any balance be found due from the steamship Beaver to said libelant, Olaf Lie, individually and also on behalf of the owners of said steamship Selja, there be deducted therefrom one-half of all damages awarded under clauses 2, 3, 4, and 5 of this (interlocutory) decree, and that, if no balance be then due, no damages be recovered by said libelant for himself individually or for the owners of said steamship Selja, but that, if any balance be found due, said libelant have and recover said balance from said steamship Beaver for himself and the owners of said Selja in proportion to the respective amounts of their claims."

As half of the cargo damages were more than the half damages awarded to the Selja, the result was that the master and owner of that ship recovered nothing; and to that effect, in part, was the final decree. The appeal is from that portion of that decree, and from the further provision thereof that the costs be divided.

It is conceded by the appellant that, if the trial court was right in holding both vessels in fault, the decree appealed from is correct. It is, however, strenuously contended on its behalf: First, that the Selja was not in fault; and, secondly, that if so her fault did not contribute to the collision, and hence that the libelant should have been awarded the full amount of damages suffered, with interest and costs.

At the time of the collision, and for some time before, a dense fog prevailed. The Beaver, which was a passenger as well as a freight ship was on her regular run from San Francisco, Cal., to Portland, Or., and was proceeding, according to the contention of the appellant, at about 15 knots an hour, and according to the contention of the appellee at about 12 knots an hour. That either was excessive speed under the circumstances prevailing is conceded by the proctors for the appellee, so that in that respect, at least, the Beaver was clearly in fault. That fact, of course, attached to her some liability. Was she solely responsible for the collision? is the question. It occurred at 3:16 p. m. of September 22, 1910. The Selja was bound for San Francisco from Yokohama, Japan, in command of the libelant, Capt. Lie. She encountered the fog at 1 a. m. of the day of the accident. Except for the fog the weather was good, and the sea was calm, with a long, rolling swell. When she entered the fog, the third officer, then on watch, called the captain to the bridge, where he remained practically continuously, directing the navigation of the ship up to the time of the collision. He testified, among other things, substantially that from 1 o'clock a. m. to 3:05 p. m. of September 22d, the Selja was running at half speed; that at 2:50 he heard a whistle that sounded loud and clear from three to four points on his port bow, which he thought was the Point Reyes whistle; and that he continued to hear that whistle at intervals of 35 seconds to the time of the col-

lision; that at 3 o'clock, or a very short time after that, he heard the first whistle of the Beaver, "about right ahead," the Selja then still going at half speed, which speed was maintained until 3:05 p. m.; that the first whistle of the Beaver "sounded faint but distinct" and "sounded far off," and that he at first thought it might be one of the "fog horns off Golden Gate"; that at 3:05 he came to the conclusion that the whistle ahead was that of an approaching steamer; and that thereupon he reduced the half speed of the Selja, which was 6 knots an hour, to "slow." When asked why he did not stop the engines of the Selja when he heard the first whistle of the Beaver, his answer was:

"Well, because the sound was located as good as could be located in a fog, and showed absolutely no danger of a collision."

From 3:05 to 3:15 the Selja was kept at slow speed. At 3:15, according to Capt. Lie's testimony, the Beaver loomed in sight, and at 3:16 the collision occurred. The witness further testified that when he first saw the Beaver at 3:15 he thought the Selja was making practically no headway, which, though unimportant, could not have been true, since manifestly her speed of 3 knots or more an hour at 3:15 must necessarily have carried her forward a considerable distance. One minute thereafter she collided with the Beaver. Capt. Lie also testified that when the Beaver first loomed in sight at 3:15 he heard her blow three whistles, at which time he also ordered three whistles and full speed astern—all of which was ineffectual, for the vessels collided at 3:16. Had the master of the Selja stopped her engines when he first heard the whistle of the Beaver, practically right ahead, as he himself testified, or at almost any time thereafter during the ten or more minutes that the Beaver was sounding her whistle every 35 seconds, manifestly the collision could not have occurred, for at the rapid and unlawful speed at which the Beaver was going she would necessarily have passed the point of collision. But the uncontradicted evidence shows that the Selja's engines were certainly not stopped prior to 3:10—at least 10 minutes after her master had heard the first whistle of the approaching vessel. No amount of argument, no matter how ingenious and clever, can justify a court in ignoring the plain provisions of statute law. Article 16 of the act of Congress entitled "An act to adopt regulations for preventing collisions at sea" provides, among other things, that:

"A steam vessel hearing, apparently forward of her beam, the fog signal of a vessel the position of which is not ascertained shall. so far as the circumstances of the case admit, stop her engines, and then navigate with caution until danger of collision is over." 26 St. L. 326.

That the captain of the Selja did not know the position of the Beaver until she came in sight, only one minute before the collision, is perfectly manifest from his testimony. And that he was familiar with the requirements of article 16 above referred to is also apparent; he having testified in effect that, as published in his own country, it required the stopping of his engines, under the circumstances of this case, upon the hearing of the first whistle, until the location of the approaching vessel could be "surely or exactly located."

We regard it as clear that decisions based upon article 18 of the

.Revised International Regulations for Preventing Collisions at Sea are inapplicable to the present case. That article provided as follows:

"Art. 18. Every steamship, when approaching another ship so as to involve risk of collision shall slacken her speed, or stop and reverse, if necessary." Act March 3, 1885, c. 354, 23 St. L. 438, 441.

That rule, as·said by the court below, did not require any specific act to be done or left undone in a given case; still, under it, good judgment and good seamanship was required, as is thoroughly settled. But article 18 of the Revised International Regulations was subsequently superseded by article 16, first herein referred to, imposing a positive duty upon every vessel hearing, apparently forward of her beam, the fog whistle of another vessel the position of which is not known, to, so far as the circumstances of the case admit, immediately stop her engines and then navigate with caution until the danger of collision is past. In the present case it is not pretended that any circumstances existed which prevented the stopping of the Selja's engines when the first whistle of the Beaver was first heard by the master of the Selja, apparently right ahead. So far as anything to the contrary appears, not only was there no reason why he should not immediately have stopped his engines upon hearing the first whistle of the Beaver, as positively required by the express provision of Rule 16, but his action in continuing to go forward in a dense fog at a speed of 6 knots an hour from the time he first heard the Beaver's whistle at 3 p. m., until 3:05 p. m., and then at slow speed until 3:15 p. m., cannot be reconciled with good seamanship. Although the Beaver's whistle was being sounded every 35 seconds, it is manifest from Capt. Lie's own testimony that he knew nothing of the location of the Beaver until the latter loomed in sight, only one minute before the collision. The cases are very numerous in which an approaching whistle which sounded far off was really very close, and in which the sound seemed to come from one direction while in fact it came from another. Indeed, it is a matter of common knowledge that sounds in a dense fog are very deceptive.

The foregoing views are well supported by The El Monte (D. C.) 114 Fed. 796; The Rondane, 9 Asp. M. C. 108; The Brittania, 10 Asp. M. C. 67; The St. Louis, 98 Fed. 750, 39 C. C. A. 201; The Admiral Schley, 142 Fed. 64, 73 C. C. A. 250.

The further contention on the part of the appellant that, even if the Selja was in fault in the particulars indicated, such fault was not a contributing cause to the collision, cannot be sustained. As pointed out by the trial court, the law is that, where a vessel has committed a positive breach of a statutory duty, she must show not only that probably her fault did not contribute·to the disaster, but that it could not have done so. The Pennsylvania, 19 Wall. 125, 136, 22 L. Ed. 148; The Ellis, 152 Fed. 981, 82 C. C. A. 112; The Davidson v. American S. B. Co., 120 Fed. 250, 56 C. C. A. 86; The Dauntless (D. C.) 121 Fed. 420; The Admiral Schley,· 142 Fed. 64, 73 C. C. A. 250; Hawgood T. R. Co. v. Mesaba S. S. Co., 166 Fed. 697, 92 C. C. A. 369.

So far from the Selja having sustained that burden, it is perfectly apparent that had she observed the statutory rule, or even the rule of good seamanship, the Beaver would necessarily, as has already been observed, have passed the point of collision before the Selja could have reached it. The record shows that the Beaver did not hear the Selja's whistle until about 3:13 p. m., when her engines were immediately reversed full speed astern—too late, however, to avoid the collision three minutes later.

We agree with the court below that the two ships were equally in fault, and, accordingly, affirm the judgment.

Judgment affirmed.