## DAVIS v. THE ESSO DELIVERY NO. 13
### et al. and seven other cases.
### Nos. 3281, 3287–3289, 3292, 3298, 3299 and 3300.

United States District Court
D. Maryland.
June 20, 1951.

George W. P. Whip, of Baltimore, Md., for libellant, Hamilton C. Davis.

William A. Grimes and Southgate L. Morison, of Baltimore, Md., for respondents, Esso Delivery No. 13 and Esso Standard Oil Co.

Herbert L. Grymes, of Baltimore, Md., for respondent, Carrol E. Martin, and for libellants.

COLEMAN, Chief Judge.

This is a collision case. The vessels involved were the Esso Delivery No. 13, a tanker barge, owned by the Esso Standard Oil Company, and the Susanne, a pleasure motor boat, owned by libellant, Hamilton C. Davis.

The material facts relative to the collision are as follows: Early in the morning of July 8, 1950, the tanker barge was proceeding up Chesapeake Bay bound for Baltimore with her proper lights showing. She is propelled by Diesel engines, length 246', beam 40', draft when fully loaded 14' 6", gross tonnage 1224, net 727. She was light at the time and her draft was approximately 1' forward, and 8' 3" aft. The night was clear, with good visibility and the tanker was proceeding at about 9½ knots per hour. As she passed buoy No. 9 off Tolchester Beach, Maryland, to starboard, as she was required to do, and was headed for buoy No. 7, which she was also required to pass to starboard, she struck with her starboard bow about 10 feet aft of her own stem, the Susanne, a motor boat 38 feet long, which was anchored at the time. No signals of any kind were given by either vessel prior to the collision, but immediately thereafter the tanker barge's engines were stopped, a general alarm was sounded, her engines were reversed, then stopped, and a life boat was put over which picked up those who had been on the Susanne and put them aboard the tanker barge. The Susanne sank and was a total loss, but the tanker barge sustained no damage.

Seven separate libels have been filed, all as a result of the collision. Davis has filed against the tanker barge; the Esso Standard Oil Company, her owner, and Martin as the alleged purchaser of the Susanne. Martin, in turn, has filed against the Esso Standard Oil Company and the master of the tanker barge. The remaining six libels have been brought by five individuals, guests of Martin on the Susanne, for a fishing trip, and by Kramer, who was employed by Martin to operate the Susanne, to recover damages for injuries which they claim to have sustained, and also for loss of personal effects due to the collision. All of the eight suits were consolidated in one hearing, and all questions involved were considered, except the various sums to be allowed as damages to the respective parties.

In view of the fact that the tanker barge sustained no damage but the Susanne was a total loss, and the persons on board of her claim to have sustained personal and property damage, it is asserted by the Esso Standard Oil Company that if the two vessels are found to have been mutually at fault, that company will be entitled to set off against any damages awarded the owner of the Susanne or those responsible for her operation, any amounts adjudged against that Company by reason of the collision on account of its liability for damages sustained by those on board the Susanne. There is also the question presented as to whether Davis or Martin was the owner of the Susanne at the time of the collision. One or the other of their respective libels must, of course, be dismissed, depending upon which person is found to have been the owner of the Susanne.

■ First, as to the status of libellant Davis, we find, by the weight of the credible evidence, that at the time of the collision he was still the owner of the Susanne and, therefore, he has the right to sue, as he has done, both the Susanne and the tanker. Legal title still remained in him, contrary to what he may have thought. The fact that Martin had made part payment is not controlling. The testimony of his broker is to be accepted as true in the light of all the other circumstances developed by the testimony, that there was to be given to Martin, the prospective purchaser and one of the respondents, the right to a further survey of the vessel and to refuse to accept the boat, if he saw fit, in the event the vessel was thereby found not to be up to the implied, if not expressed, requirements of the contract of purchase. Nothing that libellant Davis and Martin said to each other or anything that Martin did, amounted to a waiver, in the face of the other testimony, particularly that of the broker.

■ We turn now to the major question, i. e., that of liability of one or both of the vessels for the collision, and find that by the weight of the credible evidence there was mutuality of fault for the following reasons.

As respects the Susanne: she was at fault for having no light showing at the time of the collision. Article 11 of the Inland Rules, 33 U.S.C.A. § 180, requires that a vessel of this size "carry forward, where it can best be seen, but at a height not exceeding twenty feet above the hull, a white light in a lantern so constructed as to show a clear, uniform, and unbroken light visible all around the horizon at a distance of at least one mile". The weight of the credible evidence is very definitely to the effect that no such light was showing at the time of the collision. There is no testimony, and nothing on the chart or otherwise indicating that this had been designated a special anchorage area within the proviso of Article 11 which would have exempted the Susanne from carrying the "at anchor" light.

As to the position of the Susanne at the time of the collision there is a conflict in the testimony, just as there is with respect to whether she carried a light. At the time of collision the Susanne was probably in the channel, but even if she was not,—even if we accept the testimony of Kramer, her captain, as the more credible, namely, that she was not in the ship channel,—she was nevertheless required to carry the white "at anchor" light.

In addition to the Susanne's failure to have the proper "at anchor" light showing, those aboard her were apparently negligent.

in not doing something more than they did in an effort to attract the attention of the oncoming tanker, and thereby to assist in avoiding the collision. Without reviewing all of the testimony on that point, suffice it to say that, at most, very little was done and more could and should have been done to give warning to the tanker because, as was testified by two or three of those aboard the Susanne, the tanker had been visible to them for quite a while; in fact, her approach had, with some anxiety, been called to Captain Krämer's attention, but he is said to have replied that there was no need to worry, that the oncoming vessel would pass at a safe distance.

Also, the Susanne was probably not securely anchored; she was probably drifting, and so her exact location in relation to the channel was not known by those aboard her. However, as just stated, I am not now deciding, because of the great conflict in the evidence and because unnecessary to do so, whether the Susanne was actually inside or outside of the ship channel, since by the weight of the credible evidence, the Susanne was not showing the required light at the time of the collision, whether she was within or without the channel, which, in and of itself, was sufficient to establish negligence on the part of the Susanne, which was a proximate cause of the collision. It is therefore likewise unnecessary to make a definite ruling as to whether or not more could have been done by those aboard the Susanne to warn those navigating the tanker as she approached, which would have prevented the collision. Also, for the same reason, it is not necessary to decide whether the Susanne was drifting.

So much, then, for the question of fault on the part of the Susanne, and we turn to a consideration of what the tanker did, or failed to do, that constituted fault on her part directly contributing to the collision. While there is no statutory regulation or rule with respect to having a look-out in the bow, this tanker was a large vessel with the only look-out in the wheel-house. It is true that where the helmsman stood was ten feet above the deck. However, this was some 75 feet aft of the tanker's bow which rose 14 feet above the water line, and her master admitted that there was a "blind" space when looking dead ahead of the vessel from the wheel-house for about 100 feet, because of this elevation in her bow. However, if there had been a look-out in the bow, he would have been some 75 feet nearer to the Susanne as the tanker approached her than were those in the wheel-house. Even on clear nights, objects unlighted on the water cannot be seen at any great distance. There was no obligation on the part of the tanker to have used her searchlight, because she was not required to assume that there was some obstacle, either lighted or unlighted, in the channel, or that there would be an unlighted vessel close at hand, even though outside the channel. However, we conclude that it was negligent not to have posted a bow look-out. A distance of 75 feet on a dark night becomes very material in terms of visibility or non-visibility of unlighted objects.

It has not been proven that the tanker "cut" any of the buoys or that she was outside the channel. Likewise, it has not been proven that the tanker was going at too great speed under the circumstances. She had a right, if she was in the ship channel, as claimed and as we believe she was, to maintain her rate of speed, which was about nine knots.

To summarize: both vessels were clearly at fault which directly contributed to the collision; the Susanne for failure to display a white light at a height not exceeding 20 feet above her hull, and the tanker for failure to have a bow look-out. Also, we do not believe there was any material difference in the degree to which their respective acts of negligence contributed directly to the collision. Therefore, this is not a case for application of the major and minor fault doctrine, and both vessels are held to have been equally at fault, and equally liable in damages.

We now turn to the remaining question to be determined in advance of (1) a determination of the value of the Susanne at the time she was lost, and the award of damages under the mutual fault rule; and (2) what damages the six per-

sons aboard the Susanne who have filed individual libels are entitled to, namely, the question whether as the Esso Standard Oil Company contends, since we have found this to be a case of mutual fault, it is entitled to set off against any damages awarded the Susanne, any sums adjudged against the company by reason of the collision, including any liability to those aboard the Susanne.

In other words, the precise question now to be considered is this: Where two vessels are in collision as a result of which one sinks and is a total loss, and the other is not damaged but each is found responsible for the collision, thus giving rise to divided damages; and where the lost vessel at the time of her sinking was loaned to a third party who operated her entirely independently of her owner, by reason of which her owner is absolved from all responsibility for the collision; and where still fourth parties, guests of the third party on the lost vessel at the time of the collision, sue the other vessel to recover for their injuries resulting from the collision, may the owner of this other vessel set off against such award as may be made against it to the owner of the lost vessel, such sums as may be awarded to the fourth parties in their suits against the other vessel?

We conclude that this question must be answered in the affirmative. Libellant Davis claims that although he has been found to be the owner of the Susanne at the time of the collision, but was in no respect responsible for it, since Martin at the time was solely responsible for its navigation through his employee, Kramer, any award should be against Martin and not against him, Davis.

On the other hand, the position taken by the Esso Standard Oil Company is that personal liability of a vessel owner is not a prerequisite to a right of set off against the owner in an in rem proceeding, and that this principle is not affected by the fact that the Susanne was a total loss. In other words, Davis contends that there is nothing within the jurisdiction of the admiralty court against which the Esso Standard Oil Company may set off any claim, since the Susanne was a complete loss, but the Company denies this on the ground that there is, or will be, a res in the court; that is to say, the fund that will replace the Susanne which should be made subject to such award as may be made to Davis.

While we have not been referred to, nor have we found any reported case with facts very closely analogous to those before us, we are satisfied that there are decisions based on sufficiently analogous facts which support the position of the respondent Oil Company, and that they represent sound law.

In the first place, it is well established that in admiralty a sum awarded as the value of a vessel is the res that is substituted for the vessel. O'Brien v. Miller, 168 U.S. 287, 18 S.Ct. 140, 42 L.Ed. 469; Sheppard v. Taylor, 5 Pet. 675, 8 L.Ed. 269; and that just claims against this res must first be paid before any other distribution. The Siren, 7 Wall. 152, 19 L.Ed. 129. In Re United States Steel Products Co., 2 Cir., 24 F.2d 657, involved a collision between the S. S. Steel Inventor, owned by the United States Steel Products Co., and the United States destroyer Woolsey. These vessels collided off the Panama Coast in the Pacific Ocean. The Woolsey sank and became a total loss. The Steel Inventor was damaged and her cargo sustained serious loss. The Products Company filed a petition for limitation of liability and the usual stipulation to pay into court the amount of its interest in the vessel and pending freight, and asked for exoneration from all fault. The United States Government answered and filed a claim for $1,500,000 by reason of the Woolsey's loss. It contested the claims to both exoneration and limitation of liability and sought a decree in the Government's favor as claimant for the amount of its damages. The district court found mutual fault of both vessels and entered an interlocutory decree, granting limitation of liability and allowed the Government to recover one-half of its damages due to the collision, less one-half of those of the petitioner, the Steel Products Company. Certain owners of cargo on the Steel Inventor petitioned to intervene as claimants, asserting that while no

award had as yet been made fixing damages to the United States Government, it was certain that an award would be made of a very large sum, and they invoked the principle that since the Government was in court to enforce a claim, it was in the precise position of a private suitor; that since both vessels had been held at fault, the cargo owners had claims against the Woolsey even though they were incapable of enforcing them against the United States by direct libel and that, therefore, what the United States might recover would become a substitute for the Woolsey. We quote the following from the court's opinion which is directly applicable to the present case (24 F.2d 657, at pages 658–659): "The sum awarded or to be awarded as the value of the Woolsey is the res and is a substitute for the vessel. O'Brien v. Miller, 168 U.S. 287, 18 S.Ct. 140, 42 L.Ed. 469; Sheppard v. Taylor, 5 Pet. 675, 8 L.Ed. 269. Before such a res should be paid out to the United States, just claims against it must be paid. United States v. The Thekla, 266 U.S. 328, 45 S.Ct. 112, 69 L.Ed. 313; The Siren, 7 Wall. 152, 19 L.Ed. 129. Such claims would include those related to the subject-matter of the litigation. * * *

\* \* \* \* \* \*

"It makes no difference that in the case at bar the res against which the appellants seek a recovery was obtained by the government as a loss of a vessel due to collision, whereas in The Siren the res was the proceeds of a sale of the offending vessel itself. At bar there is an interlocutory decree entered, and a right of action, which the government claimed is crystalized, and the fact that it will recover a fund is made certain. Whatever that amount is, it will be large, which will more than cover the appellants' claims, and, while the exact figures will be unknown until the final decree is entered, that fact of itself is unimportant in fixing the rights of the appellants. It is sufficient that there is a res before the court, which is a substitute for the Woolsey."

Thus the gist of the holding of the court in the United States Steel Products Company case, from which we have just quoted, is clearly this: Where one vessel is lost in a mutual fault collision, any claims that could validly be asserted against such vessel may be asserted against any award made to, and in substitution for, that vessel herself.

On behalf of libellant Davis, it is contended that the law is otherwise, as laid down in The Beaver, D.C., 197 F. 866; 9 Cir., 219 F. 134; 9 Cir., 219 F. 139, and should be followed. In that case The Beaver and The Selja were in a collision, as a result of which the latter vessel was a total loss. It was found to have been a mutual fault collision. Summarized, the gist of the decision in The Beaver case is as follows: The trial court had awarded the charterer of The Selja full recovery against The Beaver for loss of freight due to the total loss of The Selja. But an appeal was taken from this decision, it being contended that since the disaster was caused by the mutual fault of the two vessels, the charterer of The Selja was only entitled to recover subject to the ruling of cross-liabilities. However, the appellate court affirmed the trial court, holding that the charter of The Selja was not a demise and that therefore, since the charterer had nothing to do with the navigation of The Selja, he could not be held responsible in any way for the negligence of her master, and that, therefore, the charterer was entitled to recover his entire damages from The Beaver.

Libellant Davis in the present case contends that he is in the identical position of the charterer of The Selja in The Beaver case. While it is true that the party against whom the claimed set off was disallowed was an innocent party and in no way in control of the navigation of the vessel, he stood in a very different position from that of Davis, the present libellant. That is to say, in The Beaver case, the innocent party was a time charterer, and besides being declared in no way responsible for her navigation, it was not his vessel that had committed the wrong. Thus, it would obviously have been unfair to apply the in rem liability of the vessel against a person in such circumstances. But in the present case libellant Davis *was the owner,* and though not in charge of the Susanne at the

time of the collision, it was, in fact, his vessel that was found at fault.

To say that the position of libellant Davis is like that of either a time charterer or an innocent cargo owner fails to take into account the real meaning of the principle of an in rem proceeding against a ship, by which the value of the ship becomes the res which is substituted for it. Thus while it may appear prima facie to be an anomaly that a vessel owner who has had nothing to do with her navigation at the time she is lost must, nevertheless, suffer, there are, in fact, in admiralty other well recognized examples where the innocent owner is ultimately made to bear the loss, one of the most extreme of which arises in compulsory pilot cases, where, a vessel having been found liable for a collision occasioned by faulty navigation by a compulsory pilot, the owner though not at fault, nevertheless, is compelled to bear the loss. The China, 7 Wall. 53, 19 L.Ed. 67; O'Hare v. U. S. A., 1950 A.M.C. 182. "Our jurisprudence affords examples of legal liability without fault, and the deprivation of property without fault being attributable to its owner. The law of deodands was such an example. The personification of the ship in admiralty law is another." Chicago, R. I. & P. R. Co. v. Zernecke, 183 U.S. 582, 586, 22 S.Ct. 229, 231, 46 L.Ed. 339. See also The Barnstable, 181 U.S. 464, 21 S.Ct. 684, 45 L.Ed. 954; The Harper No. 145, 2 Cir., 42 F.2d 161; The Stamford, D.C., 35 F.2d 55.

Insurance is a well recognized exception to this principle. It is not considered an interest in the vessel or freight insured on the theory that insurance which a person has on property is not an interest in the property itself, but is a collateral contract personal to the insured, guaranteeing him against loss of the property by specified casualty, but not conferring upon him any interest in the property since that interest he already has, by virtue of his ownership. In other words, the contract of insurance does not attach itself to the thing insured, nor go with it when it is transferred, contrary to the rule respecting claims for damages to a vessel by reason of a collision, these claims inhering in the property itself and being included in the transfer of interest therein. See The City of Norwich, 118 U.S. 468, 6 S.Ct. 1150, 30 L.Ed. 134; The Scotland, 118 U.S. 507, 6 S.Ct. 1174, 30 L.Ed. 153; The Great Western, 118 U.S. 520, 6 S.Ct. 1172, 30 L.Ed. 156; Butler v. Boston & S. S. S. Co., 130 U.S. 527, 9 S.Ct. 612, 32 L.Ed. 1017; Phillips v. Clyde S. S. Co., 4 Cir., 17 F.2d 250; Robinson on Admiralty, Sec. 122, p. 935–936.

Libellant Davis does not deny that if the Susanne had not been lost, any valid claims against her could be asserted against the proceeds, were she sold. Thus, in such event, libellant Davis would become the ultimate loser, unless able to recover against Martin. Therefore, the situation should not be altered merely by carrying it one step further and substituting the fund for the Susanne. Davis is placed in no worse position than he would have been if the Susanne had not been a total loss. He still has his right of action against Martin, if he desires to pursue it.

A decree will be signed in accordance with this opinion.